Stephen Z. Starr, Esq.
Vildan E. Starr, Esq.
STARR & STARR, PLLC
260 Madison Ave., 17th Floor
New York, New York 10016
tel. (212) 867-8165
fax. (212) 867-8139
e-mail sstarr@starrandstarr.com

Attorneys for Debtor, Balasubramaniam J. Harid

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 Case No. |
| | : | |
| Balasubramaniam J. Harid, | : | 18-13632 (MEW) |
| | : | |
| Debtor. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAN OF REORGANIZATION, DATED MARCH 20, 2019, OF BALASUBRAMANIAM J. HARID UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Balasubramaniam J. Harid, debtor and debtor in possession ("Debtor") herein proposes the following plan of reorganization pursuant to chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan, and the Disclosure Statement simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires). Terms used in this Plan that are defined in the Bankruptcy Code shall have the meaning assigned therein, unless specifically defined herein:

1.1. *"Administrative Claims"* means all costs and expenses of administration of the Chapter 11 Case Allowed under §§ 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under § 507(a)(2).

1.2. *"Administrative Professional Fee Claim"* means any Administrative Claim of a professional subject to allowance under §§ 330 or 503 of the Bankruptcy Code or an order of the Bankruptcy Court.

1.3. *"Allowed"* means that portion of a Claim that, (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.4. *"Ballot"* means the form transmitted with the Plan and Disclosure Statement to those entitled to vote on the Plan, on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and § 1126 of the Bankruptcy Code.

1.5. *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

1.6. *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of New York presiding over the Chapter 11 Case.

1.7. *"Bankruptcy Rule(s)"* means the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto, in effect for this case.

1.8. *"Bibby"* means Bibby Financial Services, Inc. f/k/a Bibby International Trade Finance, Inc.

1.9. *"Business Day"* means any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.10. *"Cash"* means legal tender of the United States of America or cash equivalents.

1.11. *"Class"* means a category of Holders of Claims as described in Article III.

1.12. *"Claim"* is defined in § 101(5) of the Bankruptcy Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under §§ 550 or 553 of the Bankruptcy Code and any claim against the Debtor that does not arise until after the commencement of the Chapter 11 Case for a tax entitled to priority under § 507(a) of the Bankruptcy Code.

1.13. *"Chapter 11 Case"* means the chapter 11 case commenced by the voluntary filing by the Debtor and assigned case number 18-13632 (MEW).

1.14. *"Confirmation Date"* means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.15. *"Confirmation Order"* means the order of the Bankruptcy Court pursuant to § 1129 of the Bankruptcy Code confirming the Plan.

1.16. *"Crestmark"* means Crestmark Bank.

1.17. *"Debtor"* means Balasubramaniam J. Harid.

1.18. *"Disclosure Statement"* means Debtor's Disclosure Statement, dated March 20, 2019, with respect to the Plan, and any amendments thereto made in accordance with the provisions of the Bankruptcy Code.

1.19. *"Disputed Claim"* means (a) any Claim or portion of a Claim (other than an Allowed Claim) which is scheduled by the Debtor as disputed, contingent or unliquidated; or (b) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code as unliquidated or contingent; or (c) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation by the Bankruptcy Code and Bankruptcy Rules by an Order of the Court, or by this Plan, which objection has not been determined, in whole or in part by a Final Order.

1.20. *"Distribution"* means a payment of Cash required under this Plan to be distributed to the holders of Allowed Claims.

1.21. *"Distribution Address"* means the address set forth (i) on the Schedules filed with the Bankruptcy Court, (ii) on the books and records of the Debtor or his agents, or (iii) in a letter of transmittal by a Holder of an Allowed Claim, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the foregoing listed documents.

1.22. *"Distribution Agent"* means the Reorganized Debtor.

1.23. *"Distribution Date"* Means the date of the initial Distribution which shall occur ten (10) days after the Effective Date, or if ten days after the Effective Date is not a Business Day, on the first Business Day thereafter.

1.24. *"Dr. Harid"* means the Debtor's spouse, Dr. Jayalakshmi Harid, from whom the Debtor legally separated as August 31, 2018, pursuant to a separation agreement.

1.25. *"Effective Date"* means the first Business Day occurring after the Confirmation Order becomes a Final Order.

1.26. *"Estate"* means the estate of the Debtor pursuant to §§ 541 and 1115 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.27. *"Exempt"* means any property which the Debtor has exempted on the Schedules filed in the Chapter 11 Case pursuant to § 522 of the Bankruptcy Code.

1.28. *"Final Decree"* has the meaning given to it Bankruptcy Rule 3022.

1.29. *"Final Order"* means an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

1.30. *"Holder"* means the legal or beneficial holder of a Claim (and, if used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

1.31. *"Impaired"* means a Claim or Class that is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.32. *"Lien"* has the meaning given to it in § 101(37) of the Bankruptcy Code, <u>i.e.</u>, means charge against property to secure payment of a debt or performance of an obligation.

1.33. *"Non-Tax Priority Claim"* means any claim against the Debtor to the extent entitled to priority in payment under § 507(a)(4)-(6) of the Bankruptcy Code.

1.34. *"Non-Exempt Property"* means any property of the Estate within the meaning of § 541 of the Bankruptcy Code that is not Exempt.

1.35. *"Petition Date"* means November 21, 2018.

1.36. *"Plan"* means the Plan of Reorganization, dated March 20, 2019, of Balasubramaniam J. Harid under Chapter 11 of the United States Bankruptcy Code, and any amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code.

1.37. *"Priority Claim"* means a Claim, other than an Administrative Claim, that is entitled to priority under § 507 of the Bankruptcy Code.

1.38. *"Priority Tax Claim"* means a claim against the Debtor to the extent entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

1.39. *"Projected Disposable Income"* means the Debtor's projected disposable income as defined in § 1325(b)(2) of the Bankruptcy Code.

1.40. *"Pro Rata"* means proportionally according to the total amount of Allowed Claims in a particular Class.

1.41. "*Reorganized Debtor*" means the Debtor on and after the Effective Date.

1.42. "*Reserve Fund*" shall be a fund which shall be established by the Reorganized Debtor after the Confirmation Date, which shall be equal to a sum sufficient to pay (i) disputed Claims which would have been paid under the Plan but for the dispute as either claimed by the creditor or determined by the Court; and (ii) estimated fees of the Debtor's counsel, which may be incurred subsequent to the Confirmation Date.

1.43. *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.44. "*Secured Claim*" means a claim secured by a Lien on property of the Estate to the extent of the value of such collateral, as determined in accordance with § 506(a) of the Bankruptcy Code or, in the event such claim is subject to setoff under § 553 of the Bankruptcy Code, to the extent of such setoff.

1.45. "*Surplus Income*" means the net income of the Reorganized Debtor realized after payment of his reasonable and customary monthly expenses for a period of sixty (60) months from the Effective Date.

1.46. *"Unsecured Claim"* means any Claim that is not an Administrative Claim, Priority Claim or Secured Claim, including, without limitation, Claims based upon pre-petition trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the chapter 11 case.

1.47. "*United States Trustee Fees"* means all fees and charges assessed against the Estates by the United States Trustee and due pursuant to 11 U.S.C. § 1930.

# ARTICLE II
# DESIGNATION OF CLAIMS

All Claims, as defined herein against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

2.1   <u>Classification of Claims</u>. Section 2.2 sets forth the designation of the Classes of Claims.  A Claim is classified in a particular Class for voting and Distribution purposes only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim qualifies within the description of that different Class or Classes.

Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article II provides explanations of the different Claim classifications.  Administrative Claims, Administrative Professional Fee Claims, United States Trustee's Fees, and Priority Tax Claims have not been classified and are excluded from the Classes set forth in section 3.1 in accordance with § 1123(a)(1) of the Bankruptcy Code. The treatment to be provided for Allowed Claims pursuant to this Plan and the consideration provided for herein shall be in full and final satisfaction, settlement, release and discharge of such respective Claims.

2.2   <u>Classes</u>. For purposes of the Plan, those persons holding Claims against the Debtor are grouped in accordance with §1122 of the Bankruptcy Code as follows:

<u>Class 1</u>: shall consist of all Allowed Non-Tax Priority Claims.

<u>Class 2</u>: shall consist of the Allowed Secured Claim of Bibby.

<u>Class 3</u>: shall consist of all Allowed Unsecured Claims.

# ARTICLE III
# TREATMENT OF CLAIMS UNDER THE PLAN

The treatment of claims under the Plan is as follows:

3.1   <u>Unclassified Claims</u>.

(a) <u>Allowed Administrative Claims other than Administrative Professional Fee Claims</u>: These Allowed Claims shall be paid in full, in Cash, upon the later of (i) allowance by the Bankruptcy Court, or (ii) or the Distribution Date, as the case may be, except that Allowed Administrative Claims incurred in the ordinary course shall be paid in the ordinary course.

(b) <u>Allowed Administrative Professional Fee Claims</u>: Allowed Administrative Professional Fee Claims shall be paid in full, in Cash, upon the later of (i) allowance by the Bankruptcy Court, or (ii) or the Distribution Date, as the case may be.

(c) <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor.  In addition, the Reorganized Debtor shall continue to incur and pay quarterly fees and any applicable interest until the entry of a Final Decree or dismissal or conversion whichever occurs first.  Unpaid United States Trustee's fees

accrue interest that is an expense of the Estate. The Reorganized Debtor shall comply with the reporting requirements of the Office of the United States Trustee until the entry of a Final Decree or dismissal or conversion of the case and shall file quarterly reports on January 15, April 15, July 15 and October 15 of each year until entry of a Final Decree.

  3.2 <u>Classified Claims</u>

  (a) <u>Class 1</u>: Class 1 shall consist of Allowed Non-Tax Priority Claims. The Debtor does not believe that he is subject to any such claims. To the extent that there are any Allowed Non-Tax Priority Claims, the Debtor shall pay to the holders of Class 1 Claims the amount of their Allowed Claim in full and in Cash on the Distribution Date, in full and final satisfaction of such Claims as against the Debtor. Class 1 Claims are not impaired under the Plan, are not entitled to vote on the Plan, and are deemed to accept the Plan.

  (b) <u>Class 2</u>: Class 2 shall consist of the Allowed Secured Claim of Bibby. The proposed treatment of Class 2 is as follows: The security deposit posted by the Debtor in the amount of $670,000.00 as collateral security for a loan extended to Danbury Pharma, LLC is surrendered as of the Effective Date of the Plan in full satisfaction of the Lien of Bibby. The Confirmation Order will constitute an order for relief from stay. The Allowed Secured Claim of Bibby shall be satisfied in full through surrender of collateral. Any remaining deficiency or unsecured Claim is a general Unsecured Claim and will be treated in section (c) below. The Allowed Secured Claim of Bibby is not Impaired and Bibby is not entitled to vote this Claim under the Plan.

  (c) <u>Class 3</u>: Class 3 shall consist of the Allowed Unsecured Claims. The Allowed Unsecured Claims total $3,726,508 as set forth on the chart below. Each holder of an Allowed Unsecured Claim will be paid as follows: (a) a Pro Rata share of the Non-Exempt Property remaining after payment in full of all Allowed Administrative Claims, Allowed Administrative Professional Fee Claims, United States Trustee's Fees, and Allowed Priority Tax Claims, less any reduction for the Reserve Fund, and (b) a Pro Rata share of the Reorganized Debtor's Surplus Income to be paid monthly for five (5) years (sixty (60) months total) commencing on the Distribution Date and each month thereafter consecutively for the following fifty-nine (59) months, less any reduction for the Reserve Fund. This Class is impaired and is entitled to vote under the Plan.

| CREDITOR | NATURE OF | CONTINGE | UNLIQUIDAT | DISPUTE | AMOUN |
|---|---|---|---|---|---|
| American | credit card debt | | | | $13,411 |
| Amur | guaranty claim | | | | $96,283 |
| Bibby | guaranty claim | | | | $2,200,98 |
| Change Capital Partners | guaranty claims | | | | $861,276 |
| CITI | credit card debt | | | | $15,000 |
| Citicards | credit card debt | | | | $4,803 |
| De Lange Finan | guaranty claim | | | | $63,186 |
| Ford O'Brien | legal service | | | | $19,000 |
| Marcum LLP | accounting services | | | | $7,500 |
| St. Johns Place | guaranty | | | | $123,274 |
| Stern Family | guaranty | | | | $321,786 |

  (d) <u>Class 4</u>: Class 4 shall consist of the claims of counterparties to executory contracts with the Debtor: BMW Financial Services, N.A. and Toyota Lease Trust (listed on the

Debtor's Schedules as Toyota Motor Credit Co.). Pursuant to Article IX of the Plan the Debtor proposes to assume both of these executory contracts and to leave the rights of these creditors unimpaired. This Class is unimpaired and is not entitled to vote under the Plan.

## ARTICLE IV
## ACCEPTANCE OF REJECTION OF THE PLAN

4.1 <u>Acceptance by Impaired Classes of Claims</u>: The Holders of Claims in Class 3 are impaired and entitled to vote to accept or reject the Plan, and the votes of Holders of Claims in those classes will be solicited. A Class of Claims impaired under the Plan shall have accepted the Plan if (i) the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (ii) more than one-half in number of the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

Under Bankruptcy Code § 1129(a)(15), if a Holder of an Unsecured Claim objects to the Plan, an individual debtor, such as the Debtor in the Chapter 11 Case, must either pay the present value of that Unsecured Claim in full or make distributions under the Plan totaling at least the value of Debtor's Projected Disposable Income over the greater of: (i) five years; or (ii) the time period during which the Plan provides for payments, whichever is longer. Under the Plan the Debtor will distribute his Projected Disposable Income for five years commencing on the Distribution Date.

4.2 <u>Fair and Equitable Test.</u> Notwithstanding a rejection by an Impaired Class of creditors, the Bankruptcy Court may confirm the Plan and the Plan will be binding upon all Classes, including the Classes rejecting the Plan, if it is demonstrated to the Bankruptcy Court that at least one impaired Class of Claims has accepted the Plan and that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Class. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are similar to those of the dissenting class and if no class receives more than it is entitled to on account of its claims, and no junior class receives or retains any property on account of such claims unless the Allowed Claims in the dissenting class are paid in full.

Under the Bankruptcy Code, the Debtor's Plan is "fair and equitable" as to a non-accepting impaired Class if the holders of Claims that are junior to the Claims in the dissenting Class will not retain any property under the Plan.

4.3 <u>Cramdown</u>. If a Class of Creditors does not accept the Plan, Debtor will seek to obtain confirmation through the cramdown provisions of Bankruptcy Code § 1129(b). The absolute priority rule is contained in Bankruptcy Code § 1129(b)(2)(B) and provides that if a Class of Unsecured Claims has not voted to accept the Plan, that Debtor may not retain Non-Exempt property unless the holders of Claims in the Class are paid in full.

Subject to such amounts as may be needed for the Reserve Fund, the Plan provides for distribution to Unsecured Creditors of all of the Debtor's Non-Exempt Property in satisfaction of the absolute priority rule.

# ARTICLE V
# MEANS FOR IMPLEMENTATION

5.1 Means of Implementation. The Plan will be financed from (a) the Non-Exempt Property of the Reorganized Debtor remaining after payment in full of all Allowed Administrative Claims, Allowed Administrative Professional Fee Claims, United States Trustee's Fees, and Allowed Priority Tax Claims, and any reduction for the Reserve Fund, and (b) the Pro Rata share of the Reorganized Debtor's Surplus Income to be paid monthly for five (5) years (sixty (60) months total) commencing on the Distribution Date and each month thereafter consecutively for the following fifty-nine (59) months, less any reduction for the Reserve Fund.

Based upon the Schedules filed in the Chapter 11 Case the Non-Exempt Property consists of the Debtor's interest in a 2017 tax refund in the amount of $70,307. It should also be noted that the Debtor has not yet received turnover of these funds which are in the possession of Dr. Harid. The Debtor has requested that Dr. Harid remit to him 50% of the 2017 joint federal tax refund in the amount of $70,307 pursuant to precedential authority providing for a 50/50 split as between a debtor in bankruptcy and the non-debtor spouse. Dr. Harid has apparently taken the position that pursuant to the separation agreement between her and the Debtor, the Debtor transferred his interest in the tax refund to her. Alternately, she has apparently taken the position that the 50/50 split rule is a minority position and that the majority of bankruptcy courts that have addressed this issue have adopted the "withholding rule" which allocates the joint tax refund between the spouses in proportion to their respective tax withholding, which entitles her to the entire amount. The Debtor anticipates either (a) a settlement will be reached regarding the tax refund with Dr. Harid in which case a duly noticed motion to approve a settlement pursuant to Bankruptcy Rule 9019 will be filed with the Bankruptcy Court, or (b) in the event the parties are unable to reach a settlement the Debtor will file a motion for turnover of Estate property pursuant to § 541 of the Bankruptcy Code. The amount available for distribution may be reduced by the Reserve Fund

The Debtor's aggregate Surplus Income based upon the Debtor's Projected Disposable Income will be $27,900 based upon a Projected Disposable Income of $465 a month for a period of five years (60 months). The amount available for distribution may be reduced by the Reserve Fund.

Following the occurrence of the Effective Date, the following shall occur to implement the Plan (i) all actions, documents and agreements necessary to implement the Plan shall be taken or executed; and (ii) on the Distribution Date and thereafter in accordance with the Plan, the Distribution Agent shall make all Distributions required to be made to Holders of Allowed claims pursuant to the Plan.

5.2 Authority to Act. After the Confirmation Date and the occurrence of the Effective Date, the Reorganized Debtor is authorized to perform those responsibilities, duties and obligations set forth herein, including making distributions as provided under the Plan. To the extent the manner of performance is not specified, the Debtor will have the discretion to carry out and perform all other obligations or duties imposed on him by, or actions contemplated or authorized under, the Plan. The Distribution Agent shall incur no liability whatsoever for any action taken, or failure to act in such capacity, except for his

5.3 Professional Fees Post-Confirmation. Following the Confirmation Date, the Reorganized Debtor shall be responsible for payment, and shall pay reasonable compensation

and reimbursement of expenses due to professionals retained by Debtor, for services rendered post-confirmation. Payment shall be made upon the submission of invoices, by such professionals to the Debtor, within fifteen (15) days of receipt of the invoices, without approval or review by the Court, unless an objection is raised. The invoices shall be forwarded to the Office of the United States Trustee, unless all creditors have been paid in full. In the event an objection is raised, then appropriate applications for reimbursement shall be made to the Court and paid upon order of the Court.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

6.1 <u>Manner of Distributions under the Plan</u>. Distributions to be made pursuant to the Plan shall be made by check drawn on a domestic bank and mailed to the Distribution Address of the recipient of the Distribution. Any Distribution required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

6.2. <u>Rounding to the Nearest Dollar</u>. Any other provision of the Plan to the contrary withstanding, no payments of portions of a dollar will be made. Whenever any payment of a portion of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down).

6.3 <u>Unclaimed Cash</u>. Except as otherwise provided herein, in the event any claimant fails to cash any Distribution within six (6) months from the date such Distribution is distributed, such claimant shall forfeit all rights thereof, and to any and all future payments, and thereafter the Claim for which such Distribution was distributed shall be treated as a disallowed Claim. In this regard, distributions to claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Court or, if no proof of claim is filed, on the schedules filed by the Debtor, or to such other address as may be designated by a claimant in a writing delivered to the Debtor, with a copy to the Debtor's counsel at least one week prior to the distribution. All unclaimed Distributions shall be redistributed with the next distribution.

## ARTICLE VII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

7.1 <u>Time for Objections to Claims</u>. Objections to Claims, except for those Claims more specifically deemed Allowed in the Plan, may be filed by Reorganized Debtor up to and including sixty (60) days following the entry of the Confirmation Order. With respect to disputed Claims, the Distribution Agent will hold in the Reserve Fund such funds as would be necessary to make the required distribution on the Claim, as listed either in the Schedules or the filed proof(s) of claim.

7.2 <u>Resolution of Disputed Claims</u>. Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claim, in his sole discretion, without notice to any party in interest.

7.3 <u>Administrative Bar Date</u>. The Debtor will file an application to set a deadline by which all Administrative Claims must be filed and approved by the Court.

7.4 <u>Payments</u>. Payments and Distributions to each Holder of a disputed Claim that ultimately becomes an allowed Claim by a Final Order of the Court shall be made in accordance with the Plan. Such payments and distributions shall be made within thirty (30) days after the

later of the Distribution Date or the entry of a Final Order allowing such Claim. Payments made in accordance with this section shall not include interest on the amount of such payment.

## ARTICLE VIII
## DISCHARGE AND INJUNCTION

8.1 <u>Full and Final Satisfaction.</u> All payments, Distributions and transfers of cash or property under the Plan are in full and final satisfaction, settlement and release of all Claims against the Debtor and the Estate, his agents, and professionals, of any nature whatsoever existing at the Confirmation Date, provided, however, that nothing herein shall abrogate any applicable professional disciplinary rules. Except as otherwise provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, on the latest to occur of (a) the Effective Date, (b) the entry of a Final Order resolving all Claims in the Chapter 11 Case, and (c) the completion of Distributions to Holders of Allowed Claims in accordance with the Plan, all Claims against the Debtor and Reorganized shall be discharged and released in full upon the completion of the payments under the Plan; <u>provided</u>, <u>however</u>, that, the Bankruptcy Court may, upon request by the Debtor, and notice and a hearing, enter an order setting forth that such Claims shall be deemed discharged and released on such earlier date as determined by the Bankruptcy Court. All persons and entities shall be precluded from asserting against the Debtor, the Reorganized Debtor, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefor were known or existed prior to the Confirmation Date regardless of whether a proof of Claim was filed, whether the holder thereof voted to accept or reject the Plan or whether the Claim is an Allowed Claim.

Except as otherwise expressly provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all persons or entities who have held, hold or may hold Claims or any other debt or liability that is discharged, terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability that is terminated or cancelled pursuant to the Plan against the Debtor's Estate, or his income, properties or interests in properties, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against, the Estate, or its respective properties or interests in properties, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor, or against his income, property or interests in property, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor, the or the Reorganized Debtor, or against his respective property or interests in property, with respect to any such Claim or other debt or liability that is discharged that is terminated or cancelled pursuant to the Plan, in respect of: (i) any actions taken prior to Confirmation of the Plan; (ii) the Plan; (iii) the authorization for or the formulation, negotiation, confirmation or consummation of the Plan; (iv) distributions, payments or transfers made under and in accordance with the provisions of the Plan; or (v) acts performed pursuant to the Plan. Nothing herein shall limit or impair the United States Government or any of its agencies from enforcement of the laws and regulations of the United States.

8.2 <u>Nondischargeable Claims</u>. Pursuant to § 1141(d)(2) of the Bankruptcy Code, the Debtor will not be discharged from any debt excepted from discharge under § 523 of the Bankruptcy Code. However, during the term of the Plan and until entry of a Final Decree the injunction provisions of the Plan, which shall be contained in the Confirmation Order shall apply equally with respect to any debt excepted from discharge.

# ARTICLE IX
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1 <u>Assumed Executory Contracts and Unexpired Leases</u>. The following are the unexpired leases and executory contracts to be assumed as obligations of the Reorganized Debtor under this Plan:

| Counterparty | Description of Agreement | Payment Terms | Cure Amounts |
| --- | --- | --- | --- |
| BMW Financial Services, N.A. | Unexpired auto lease of a 2019 MiniCooper through [date] | $_____ per month. (This will be paid according to its terms. Debtor's spouse is paying this payment and utilizing this vehicle pursuant to a Separation Agreement between her and the Debtor.) | N/A (payments are current and there are no non-monetary defaults) |
| Toyota Lease Trust | Unexpired auto lease of a 2016 Lexus RX350 through 9/11/19 | $930 per month. | N/A (payments are current and there are no non-monetary defaults |
| Dr. Jayalakshmi Harid | Executory contract -- separation agreement between the Debtor and his spouse, dated 8/31/18, | | N/A |

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the Reorganized Debtor. The Order of the Bankruptcy Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above. **If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the Confirmation of the Plan**.

# ARTICLE X
## DEFAULT

10.1 Failure of the Debtor to make the distributions required under the Plan to any and all creditors within 30 days of the Distribution Date, or otherwise as and when due, or failure of the Debtor to comply with any of the covenants or obligations contained in the Plan, which

failure shall remain uncured for a period of ten (10) days after notice and an opportunity to cure, shall constitute a default under the Plan. The foregoing shall not be construed to prevent the implementation of any modification of the Plan, in accordance with the provisions of the Bankruptcy Code.

## ARTICLE XI
## RETENTION OF JURISDICTION

11.1 Following the Effective Date of the Plan, the Bankruptcy Court shall retain such jurisdiction over this case as is legally permissible, including such jurisdiction as is necessary to ensure that the intents and purposes of the Plan are carried out. The Bankruptcy Court shall also expressly retain jurisdiction, without limitation: (i) to hear and determine all Claims against the Debtor and any objections thereto; (ii) to enforce and interpret the terms and conditions of the Plan; and (iii) to determine any and all applications for allowances of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to he paid or reimbursed under the Bankruptcy Code or the Plan. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of the Debtor's case, including the matters set forth in this Article XI, this Article XI shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII
## GENERAL & MISCELLANEOUS PROVISIONS

12.1 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code not otherwise defined herein are used in the Plan.

12.2 Severability. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

12.3 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

12.4 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

12.5 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of New York govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

12.6 Revocation or Withdrawal of the Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation hearing. If the Debtor so revokes or withdraws the Plan in its entirety, then the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to (a) constitute a waiver or release of any claims by or against, or any interests in, the Debtor or any other person, or (b) prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor. If the Debtor so revokes

or withdraws the Plan in part, then only the part of the Plan so revoked or withdrawn shall be null and void.

      12.7   Modification of the Plan.  The Debtor reserves the right to alter, amend, or modify the Plan prior to or after the entry of the confirmation order in accordance with Bankruptcy Code § 1127.

      12.8   Administrative Claims Bar Date. The holder of an Administrative Claim (including an Administrative Professional Fee Claim) arising prior to the Effective Date must file a request for payment (or final fee application, as the case may be) on or before 30 days after the Debtor's service of notice of the Effective Date and the deadline for the filing of Administrative Claims or Administrative Professional Fee Claims.

      12.9   Avoidance and Recovery Actions. As of and subject to the occurrence of the Effective Date, the Debtor will waive and release any of the causes of action under §§ 510, 544, 547, 548, 550 and 553 of the Code it may possess, except for purposes of setoff. The Debtor believes, after a thorough investigation and review with its counsel, that except for purposes of setoff against an Allowed Claim, there are no causes of action under §§ 510, 544, 547, 548, 550 and 553 of the Bankruptcy Code that would provide a meaningful source of funds for the Debtor.

      12.10   Deletion of Certain Classes. Any class of claims that is not occupied as of the date of the commencement of the confirmation hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed deleted from the Plan for all purposes.

      12.11   No Admissions. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any person with respect to any matter set forth herein.

      12.12   Further Actions.  The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, certificates, releases, and other agreements and to take such other action as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the transactions contemplated herein and therein.

      12.13   Status Reports. Subsequent to the Effective Date of this Plan, the Debtor shall file with the Bankruptcy Court post-confirmation status reports detailing its progress toward a Final Decree in this case.  Status reports shall be filed on or before January 15, April 15, July 15, and October 15 of each year until a Final Decree is entered closing the case.

      12.14   Notices.  Any notice to be provided under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid to Debtor's counsel by fax; or by hand delivery, addressed as follows:

        Starr & Starr, PLLC
        260 Madison Ave., 17th Floor
        New York, New York 10016
        fax.:  (212) 867-8139

All payments, notices and requests to Claimants, shall be sent to them at their last known address. The Debtor or any Claimant may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt, which receipt shall be deemed to be on the third business day after mailing.

Dated: New York, New York
      March 20, 2019

                          By: /s/ Balasubramaniam J. Harid
                                Balasubramaniam J. Harid


Dated: New York, New York
      March 20, 2019                    STARR & STARR, PLLC

                          By: /s/ Stephen Z. Starr
                             Stephen Z. Starr
                             Vildan E. Starr
                          260 Madison Ave., 17th Floor
                          New York, New York 10016
                          tel.: (212) 867-8165
                          fax.: (212) 867-8139
                          e-mail: sstarr@starrandstarr.com

                          Attorneys for Balasubramaniam J. Harid.
                          Debtor and Debtor in Possession