# Exhibit "A"

KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
eaisner@kacllp.com
Erica R. Aisner, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                              :          Chapter 11 Case No.
:
Balasubramaniam J. Harid,                           :          18-13632 (MEW)
:
                     Debtor.        :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AMENDED CHAPTER 11 PLAN OF REORGANIZATION

      Balasubramaniam J. Harid, debtor and debtor in possession ("Debtor") herein proposes the following amended plan of reorganization pursuant to chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

      For the purposes of this Plan, and the Disclosure Statement simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires). Terms used in this Plan that are defined in the Bankruptcy Code shall have the meaning assigned therein, unless specifically defined herein:

      1.1.   *"Administrative Claims"* means all costs and expenses of administration of the Chapter 11 Case Allowed under §§ 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under § 507(a)(2).

      1.2.   *"Administrative Professional Fee Claim"* means any Administrative Claim of a professional subject to allowance under §§ 330 or 503 of the Bankruptcy Code or an order of the Bankruptcy Court.

1.3. *"Allowed"* means that portion of a Claim that, (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.4. *"Anusha Plan Contribution"* means the monetary contribution by the Debtor's daughter, Anusha Harid, in the amount of the Allowed Professional Fees.

1.5. *"Ballot"* means the form transmitted with the Plan and Disclosure Statement to those entitled to vote on the Plan, on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and § 1126 of the Bankruptcy Code.

1.6. *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

1.7. *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of New York presiding over the Chapter 11 Case.

1.8. *"Bankruptcy Rule(s)"* means the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto, in effect for this case.

1.9. *"Business Day"* means any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.10. *"Cash"* means legal tender of the United States of America or cash equivalents.

1.11. *"Class"* means a category of Holders of Claims as described in Article III.

1.12. *"Claim"* is defined in § 101(5) of the Bankruptcy Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under §§ 550 or 553 of the Bankruptcy Code and any claim against the Debtor that does not arise until after the commencement of the Chapter 11 Case for a tax entitled to priority under § 507(a) of the Bankruptcy Code.

1.13. *"Change Capital"* means Change Capital Partners Fund I, LLC

1.14. *"Chapter 11 Case"* means the chapter 11 case commenced by the voluntary filing by the Debtor and assigned case number 18-13632 (MEW).

1.15. *"Confirmation Date"* means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.16. *"Confirmation Order"* means the order of the Bankruptcy Court pursuant to § 1129 of the Bankruptcy Code confirming the Plan.

1.17. *"Debtor"* means Balasubramaniam J. Harid.

1.18. *"Disclosure Statement"* means Debtor's Amended Disclosure Statement, dated January 22, 2020, with respect to the Plan, and any amendments thereto made in accordance with the provisions of the Bankruptcy Code.

1.19. *"Disputed Claim"* means (a) any Claim or portion of a Claim (other than an Allowed Claim) which is scheduled by the Debtor as disputed, contingent or unliquidated; or (b) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code as unliquidated or

-2-

contingent; or (c) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation by the Bankruptcy Code and Bankruptcy Rules by an Order of the Court, or by this Plan, which objection has not been determined, in whole or in part by a Final Order.

  1.20. *"Distribution"* means a payment of Cash required under this Plan to be distributed to the holders of Allowed Claims.

  1.21. *"Distribution Address"* means the address set forth (i) on the Schedules filed with the Bankruptcy Court, (ii) on the books and records of the Debtor or his agents, or (iii) in a letter of transmittal by a Holder of an Allowed Claim, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the foregoing listed documents.

  1.22. *"Distribution Agent"* means the Reorganized Debtor.

  1.23. *"Distribution Date"* Means the date of the initial Distribution which shall occur ten (10) days after the Effective Date, or if ten (10) days after the Effective Date is not a Business Day, on the first Business Day thereafter.

  1.24. *"Dr. Harid"* means the Debtor's spouse, Dr. Jayalakshmi Harid, from whom the Debtor legally separated as August 31, 2018, pursuant to a separation agreement.

  1.25. *"Effective Date"* means the first Business Day occurring after the Confirmation Order becomes a Final Order.

  1.26. *"Estate"* means the estate of the Debtor pursuant to §§ 541 and 1115 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

  1.27. *"Exempt"* means any property which the Debtor has exempted on the Schedules filed in the Chapter 11 Case pursuant to § 522 of the Bankruptcy Code.

  1.28. *"Final Decree"* has the meaning given to it Bankruptcy Rule 3022.

  1.29. *"Final Order"* means an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

  1.30. *"Holder"* means the legal or beneficial holder of a Claim (and, if used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

  1.31. *"Impaired"* means a Claim or Class that is impaired within the meaning of § 1124 of the Bankruptcy Code.

  1.32. *"Lien"* has the meaning given to it in § 101(37) of the Bankruptcy Code, i.e., means charge against property to secure payment of a debt or performance of an obligation.

  1.33. *"Non-Tax Priority Claim"* means any claim against the Debtor to the extent entitled to priority in payment under § 507(a)(4)-(6) of the Bankruptcy Code.

  1.34. *"Non-Exempt Property"* means any property of the Estate within the meaning of § 541 of the Bankruptcy Code that is not Exempt.

-3-

1.35. *"Petition Date"* means November 21, 2018.

1.36. *"Plan"* means this Amended Chapter 11 Plan of Reorganization, dated January 22, 2020, of Balasubramaniam J. Harid under Chapter 11 of the United States Bankruptcy Code, and any amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code.

1.37. *"Priority Claim"* means a Claim, other than an Administrative Claim, that is entitled to priority under § 507 of the Bankruptcy Code.

1.38. *"Priority Tax Claim"* means a claim against the Debtor to the extent entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

1.39. *"Projected Disposable Income"* means the Debtor's projected disposable income as defined in § 1325(b)(2) of the Bankruptcy Code.

1.40. *"Pro Rata"* means proportionally according to the total amount of Allowed Claims in a particular Class.

1.41. "*Reorganized Debtor*" means the Debtor on and after the Effective Date.

1.42. "*Reserve Fund*" shall be a fund which shall be established by the Reorganized Debtor after the Confirmation Date, which shall be equal to a sum sufficient to pay disputed Claims which would have been paid under the Plan but for the dispute as either claimed by the creditor or determined by the Court..

1.43. *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.44. "*Secured Claim*" means a claim secured by a Lien on property of the Estate to the extent of the value of such collateral, as determined in accordance with § 506(a) of the Bankruptcy Code or, in the event such claim is subject to setoff under § 553 of the Bankruptcy Code, to the extent of such setoff.

1.45. "*Surplus Income*" means the net income of the Reorganized Debtor realized after payment of his reasonable and customary monthly expenses for a period of sixty (60) months from the Effective Date.

1.46. *"Tax Refund Settlement"* means the compromise entered into between the Debtor and Dr. Harid, memorialized in a Stipulation, subject to Bankruptcy Court approval, which provides for the division of the 2017 tax refund 50/50.

1.47. *"Unsecured Claim"* means any Claim that is not an Administrative Claim, Priority Claim or Secured Claim.

1.48. "*United States Trustee Fees*" means all fees and charges assessed against the Estate by the United States Trustee and due pursuant to 11 U.S.C. § 1930.

-4-

# ARTICLE II
# DESIGNATION OF CLAIMS

All Claims, as defined herein against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

2.1  Classification of Claims. Section 2.2 sets forth the designation of the Classes of Claims. A Claim is classified in a particular Class for voting and Distribution purposes only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim qualifies within the description of that different Class or Classes.

Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article II provides explanations of the different Claim classifications. Administrative Claims, Administrative Professional Fee Claims, United States Trustee's Fees, and Priority Tax Claims have not been classified and are excluded from the Classes set forth in section 3.1 in accordance with § 1123(a)(1) of the Bankruptcy Code. The treatment to be provided for Allowed Claims pursuant to this Plan and the consideration provided for herein shall be in full and final satisfaction, settlement, release and discharge of such respective Claims.

2.2  Classes. For purposes of the Plan, those persons holding Claims against the Debtor are grouped in accordance with §1122 of the Bankruptcy Code as follows:

*Class 1*: shall consist of all Allowed Non-Tax Priority Claims.

*Class 2*: shall consist of the Allowed Secured Claim of Change Capital.

*Class 3*: shall consist of all Allowed Unsecured Claims.

# ARTICLE III
# TREATMENT OF CLAIMS UNDER THE PLAN

The treatment of claims under the Plan is as follows:

3.1   Unclassified Claims.

(a) Allowed Administrative Claims other than Administrative Professional Fee Claims: These Allowed Claims shall be paid in full, in Cash, upon the later of (i) allowance by the Bankruptcy Court, or (ii) or the Distribution Date, as the case may be, except that Allowed Administrative Claims incurred in the ordinary course shall be paid in the ordinary course.

(b) Allowed Administrative Professional Fee Claims: Allowed Administrative Professional Fee Claims shall be paid in full, in Cash, upon the later of (i) allowance by the Bankruptcy Court, or (ii) or the Distribution Date, as the case may be.

(c) United States Trustee's Fees: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor. In addition, the Reorganized Debtor shall continue to incur and pay quarterly fees and any applicable interest until the entry of a Final Decree or dismissal or conversion whichever occurs first. Unpaid United States Trustee's fees accrue interest that is an expense of the Estate. The Reorganized Debtor shall comply with the reporting requirements of the Office of the United States Trustee until the entry of a Final Decree or dismissal or conversion of the case and shall file quarterly reports on January 15, April 15, July 15 and October 15 of each year until entry of a Final Decree.

3.2   Classified Claims

(a) Class 1: Class 1 shall consist of Allowed Non-Tax Priority Claims. The Debtor does not believe that he is subject to any such claims. To the extent that there are any Allowed Non-

Tax Priority Claims, the Debtor shall pay to the holders of Class 1 Claims the amount of their Allowed Claim in full and in Cash on the Distribution Date, in full and final satisfaction of such Claims as against the Debtor. Class 1 Claims are not Impaired under the Plan, are not entitled to vote on the Plan, and are deemed to accept the Plan.

(b) Class 2: Class 2 shall consist of the Allowed Secured Claim of Change Capital. Change Capital shall receive the full amount of the Tax Refund Settlement and shall waive the remaining portion of its Allowed Claim which would otherwise have been included in Class 3. The Allowed Secured Claim of Change is Impaired and is therefore entitled to vote this Claim under the Plan.

(c) Class 3: Class 3 shall consist of the Allowed Unsecured Claims. Each holder of an Allowed Unsecured Claim will be paid as follows: Pro Rata share of the Reorganized Debtor's Surplus Income to be paid quarterly for five (5) years (twenty (20) payments total) commencing on the Distribution Date and the first day of each quarter (every three (3) months) thereafter. This Class is Impaired and is entitled to vote under the Plan.

## ARTICLE IV
## ACCEPTANCE OF REJECTION OF THE PLAN

4.1    Acceptance by Impaired Classes of Claims: The Holders of Claims in Classes 2 and 3 are Impaired and entitled to vote to accept or reject the Plan, and the votes of Holders of Claims in those Classes will be solicited. A Class of Claims Impaired under the Plan shall have accepted the Plan if (i) the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (ii) more than one-half in number of the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

Under Bankruptcy Code § 1129(a)(15), if a Holder of an Unsecured Claim objects to the Plan, an individual debtor, such as the Debtor in the Chapter 11 Case, must either pay the present value of that Unsecured Claim in full or make Distributions under the Plan totaling at least the value of Debtor's Projected Disposable Income over the greater of: (i) five years; or (ii) the time period during which the Plan provides for payments, whichever is longer. Under the Plan the Debtor will distribute his Projected Disposable Income for five (5) years commencing on the Distribution Date.

4.2    Fair and Equitable Test. Notwithstanding a rejection by an Impaired Class of creditors, the Bankruptcy Court may confirm the Plan and the Plan will be binding upon all Classes, including the Classes rejecting the Plan, if it is demonstrated to the Bankruptcy Court that at least one impaired Class of Claims has accepted the Plan and that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Class. A plan does not discriminate unfairly if the legal rights of a dissenting Class are treated in a manner consistent with the treatment of other Classes whose legal rights are similar to those of the dissenting Class and if no Class receives more than it is entitled to on account of its Claims, and no junior Class receives or retains any property on account of such Claims unless the Allowed Claims in the dissenting Class are paid in full.

Under the Bankruptcy Code, the Debtor's Plan is "fair and equitable" as to a non-accepting Impaired Class if the holders of Claims that are junior to the Claims in the dissenting Class will not retain any property under the Plan.

4.3    Cramdown. If a Class of Creditors does not accept the Plan, Debtor will seek to obtain confirmation through the cramdown provisions of Bankruptcy Code § 1129(b).

-8-

## ARTICLE V
## MEANS FOR IMPLEMENTATION

5.1  Means of Implementation. The Plan will be financed from (a) the Anusha Plan Contribution, (b) the Tax Refund Settlement, and (c) the Pro Rata share of the Reorganized Debtor's Surplus Income to be paid monthly for five (5) years (sixty (60) months total) commencing on the Distribution Date and each month thereafter consecutively for the following fifty- nine (59) months.

5.2.1  Approval of Tax Refund Settlement. Simultaneously with his request for Confirmation of this Plan, the Debtor will seek approval of the Tax Refund Settlement, pursuant to Bankruptcy Rule 9019, with the Debtor's spouse, Dr. Harid which is memorialized in a Stipulation of Settlement. As such, the approval of the Tax Refund Settlement is required in order for this Plan to be feasible and therefore confirmable.

5.2.2  Anusha Plan Contribution. This contribution to the funding of the Plan is critical in order to obtain Confirmation hereof. The Debtor lacks the funds to satisfy his outstanding Administrative Creditors (Professionals) and therefore the contribution is both necessary and substantial. In exchange, the estate shall grant Anusha a release from any estate causes of action which may exist as of the Confirmation Date.

5.2  Professional Fees Post-Confirmation. Following the Confirmation Date, the Reorganized Debtor shall be responsible for payment, and shall pay reasonable compensation and reimbursement of expenses due to Professionals retained by Debtor, for services rendered post-Confirmation. Payment shall be made upon the submission of invoices, by such Professionals to the Debtor, within twenty (20) days of receipt of the invoices, without approval or review by the Court, unless an objection is raised. In the event an objection is raised, then appropriate applications for reimbursement shall be made to the Court and paid upon order of the Court.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

6.1 Manner of Distributions under the Plan. Distributions to be made pursuant to the Plan shall be made by check drawn on a domestic bank and mailed to the Distribution Address of the recipient of the Distribution. Any Distribution required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

6.2. Rounding to the Nearest Dollar. Any other provision of the Plan to the contrary withstanding, no payments of portions of a dollar will be made. Whenever any payment of a portion of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down).

6.3 Unclaimed Cash. Except as otherwise provided herein, in the event any claimant fails to cash any Distribution within six (6) months from the date such Distribution is distributed, such claimant shall forfeit all rights thereof, and to any and all future payments, and thereafter the Claim for which such Distribution was distributed shall be treated as a disallowed Claim. All unclaimed Distributions shall be redistributed with the next distribution.

## ARTICLE VII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

7.1  Time for Objections to Claims. Objections to Claims, except for those Claims more specifically deemed Allowed in the Plan, may be filed by Reorganized Debtor up to and including sixty (60) days following the entry of the Confirmation Order. With respect to disputed Claims, the Distribution Agent will hold in the Reserve Fund such funds as would be necessary to make the required distribution on the Claim, as listed either in the Schedules or the filed proof(s) of Claim.

7.2  Resolution of Disputed Claims. Unless otherwise ordered by the Court, the

Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claim, in his sole discretion, without notice to any party in interest.

       7.3   <u>Payments</u>. Payments and Distributions to each Holder of a disputed Claim that ultimately becomes an allowed Claim by a Final Order of the Court shall be made in accordance with the Plan. Such payments and distributions shall be made within thirty (30) days after the later of the Distribution Date or the entry of a Final Order allowing such Claim. Payments made in accordance with this section shall not include interest on the amount of such payment.

**ARTICLE VIII**
**<u>DISCHARGE AND INJUNCTION</u>**

       8.1  <u>Full and Final Satisfaction.</u> All payments, Distributions and transfers of cash or property under the Plan are in full and final satisfaction, settlement and release of all Claims against the Debtor and the Estate, his agents, and professionals, of any nature whatsoever existing at the Confirmation Date, provided, however, that nothing herein shall abrogate any applicable professional disciplinary rules.  Except as otherwise provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, on the latest to occur of (a) the Effective Date, (b) the entry of a Final Order resolving all Claims in the Chapter 11 Case, and (c) the completion of Distributions to Holders of Allowed Claims in accordance with the Plan, all Claims against the Debtor and Reorganized shall be discharged and released in full upon the completion of the payments under the Plan.  All persons and entities shall be precluded from asserting against the Debtor, the Reorganized Debtor, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefor were known or existed prior to the Confirmation Date regardless of whether a proof of Claim was filed, whether the holder thereof voted to accept or reject the Plan or whether the Claim is an Allowed Claim.

Except as otherwise expressly provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all persons or entities who have held, hold or may hold Claims or any other debt or liability that is discharged, terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability that is terminated or cancelled pursuant to the Plan against the Debtor's Estate, or his income, properties or interests in properties, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against, the Estate, or its respective properties or interests in properties, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor, or against his income, property or interests in property, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor, the or the Reorganized Debtor, or against his respective property or interests in property, with respect to any such Claim or other debt or liability that is discharged that is terminated or cancelled pursuant to the Plan, in respect of: (i) any actions taken prior to Confirmation of the Plan; (ii) the Plan; (iii) the authorization for or the formulation, negotiation, confirmation or consummation of the Plan; (iv) distributions, payments or transfers made under and in accordance with the provisions of the Plan; or (v) acts performed pursuant to the Plan. Nothing herein shall limit or impair the United States Government or any of its agencies from enforcement of the laws and regulations of the United States.

8.2  <u>Nondischargeable Claims</u>. Pursuant to § 1141(d)(2) of the Bankruptcy Code, the Debtor will not be discharged from any debt excepted from discharge under § 523 of the

Bankruptcy Code. However, during the term of the Plan and until entry of a Final Decree the injunction provisions of the Plan, which shall be contained in the Confirmation Order shall apply equally with respect to any debt excepted from discharge.

## ARTICLE IX
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1 Assumed Executory Contracts and Unexpired Leases. Any executory contract or expired lease which has not been affirmatively or by operation of law rejected during the pendency of this Chapter 11 case shall be assumed under this Plan, the effective date for which shall be the entry of the Confirmation Order. **If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the Confirmation of the Plan. Any claim to a cure payment must also be filed by such deadline.**

## ARTICLE X
## DEFAULT

10.1    Failure of the Debtor to make the Distributions required under the Plan to any and all creditors within 30 days of the Distribution Date, or otherwise as and when due, or failure of the Debtor to comply with any of the covenants or obligations contained in the Plan, which failure shall remain uncured for a period of ten (10) days after written notice and an opportunity to cure, shall constitute a default under the Plan. The foregoing shall not be construed to prevent the implementation of any modification of the Plan, in accordance with the provisions of the Bankruptcy Code. In the event of an uncured default hereof, any creditor or party in interest may seek conversion or dismissal of this Chapter 11 case.

## ARTICLE XI
## RETENTION OF JURISDICTION

11.1 Following the Effective Date of the Plan, the Bankruptcy Court shall retain such jurisdiction over this case as is legally permissible, including such jurisdiction as is necessary to ensure that the intents and purposes of the Plan are carried out. The Bankruptcy Court shall also expressly retain jurisdiction, without limitation: (i) to hear and determine all Claims against the Debtor and any objections thereto; (ii) to enforce and interpret the terms and conditions of the Plan; and (iii) to determine any and all applications for allowances of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to he paid or reimbursed under the Bankruptcy Code or the Plan.

## ARTICLE XII
## GENERAL & MISCELLANEOUS PROVISIONS

12.1    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code not otherwise defined herein are used in the Plan.

12.2    Severability. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

12.3    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

12.4    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

12.5    Controlling Effect. Unless a rule of law or procedure is supplied by federal law

(including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of New York govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

12.6    Revocation or Withdrawal of the Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation hearing. If the Debtor so revokes or withdraws the Plan in its entirety, then the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to (a) constitute a waiver or release of any claims by or against, or any interests in, the Debtor or any other person, or (b) prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor. If the Debtor so revokes or withdraws the Plan in part, then only the part of the Plan so revoked or withdrawn shall be null and void.

12.7    Modification of the Plan. The Debtor reserves the right to alter, amend, or modify the Plan prior to or after the entry of the confirmation order in accordance with Bankruptcy Code § 1127.

**12.8    Avoidance and Recovery Actions. As of and subject to the occurrence of the Effective Date, the Debtor will waive and release any of the causes of action under §§ 510, 544, 547, 548, 550 and 553 of the Code it may possess, except for purposes of setoff. The Debtor believes, after a thorough investigation and review with its counsel, that except for purposes of setoff against an Allowed Claim, there are no causes of action under §§ 510, 544, 547, 548, 550 and 553 of the Bankruptcy Code that would provide a meaningful source of funds for the Debtor.**

12.9    Deletion of Certain Classes. Any class of Claims that is not occupied as of the date of the commencement of the Confirmation hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed deleted from the Plan for all

purposes.

12.10   No Admissions. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any person with respect to any matter set forth herein.

12.11   Further Actions. The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, certificates, releases, and other agreements and to take such other action as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the transactions contemplated herein and therein.

12.12   Status Reports. Subsequent to the Effective Date of this Plan, the Debtor shall file with the Bankruptcy Court post-Confirmation status reports detailing its progress toward a Final Decree in this case. Status reports shall be filed on or before January 15, April 15, July 15, and October 15 of each year until a Final Decree is entered closing the case.

12.13   Notices. Any notice to be provided under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid to Debtor's counsel by fax; or by hand delivery, addressed as follows:

> Erica R. Aisner, Esq.
> Kirby Aisner & Curley LLP
> 700 Post Road, Suite 237
> Scarsdale, New York 10583
> eaisner@kacllp.com

All payments, notices and requests to Claimants, shall be sent to them at their last known address. The Debtor or any Claimant may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt, which receipt shall be deemed to be on the third business day after mailing.

Dated: New York, New York
      January 22, 2020

By: */s/ Balasubramaniam J. Harid*
    Balasubramaniam J. Harid

Dated: Scarsdale, New York
      January 22, 2020      KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*

By: */s/ Erica R. Aisner*
    Erica R. Aisner, Esq.
    700 Post Road, Suite 237
    Scarsdale, New York 10583
    (914) 401-9500
    eaisner@kacllp.com